# UNITED STATES DISTRICT COURT

### DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 05 2009

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| V. | CRIMINAL COMPLAINT |
| **PAULA SUE WALKER** | CASE NUMBER: 09 mj 180 - D |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  Beginning on or about **January 2006 through and including February 2008,** in the District of Wyoming the Defendant, **PAULA SUE WALKER** did knowingly and willfully convert to her own use, monies belonging to the Social Security Administration, an agency of the United States, in an amount totaling $17,025.00.

in violation of **18 U.S.C. § 641.**  I further state that I am a Special Agent with the Social Security Administration and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF SOCIAL SECURITY ADMINISTRATION
SPECIAL AGENT JOSEPH P. JOYCE

Continued on the attached sheet and made a part hereof:   ✓ Yes     No

_____
Signature of Complainant
Joseph P. Joyce

Sworn to before me and subscribed in my presence,

October 5, 2009                         at      Cheyenne, Wyoming
Date                                                  City and State

**Hon. William C. Beaman**
**U.S. Magistrate Judge**                          _William C. Beaman_
Name & Title of Judicial Officer                  Signature of Judicial Officer

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
### SPECIAL AGENT JOE JOYCE
### U.S. V. PAULA WALKER

1. I, Joseph P. Joyce, have been a Special Agent with the Social Security Administration (SSA), Office of Inspector General (OIG), Office of Investigations (OI), Denver, Colorado, since May 2004. My regular duties with SSA OIG involve conducting investigations of waste, fraud, and abuse within programs administered by the SSA, to include investigating the theft of SSA funds. I completed the Criminal Investigator training program at the Federal Law Enforcement Training Center in Brunswick, Georgia in July 1998, and receive regular training in legal updates, fraud detection, SSA programs, firearms and defensive tactics. I have been employed in federal law enforcement since April 1998. Prior to joining SSA in May 2004, I was a Special Agent with the U. S. Environmental Protection Agency, OIG, OI, Denver, from April 2000 through April 2004, and the U. S Department of Interior, OIG, OI, Denver and Billings, Montana, from April 1998 through April 2000. I have twenty years of combined experience in federal law enforcement, federal investigations, and federal personnel security. I received a Master's degree from the University of Denver in August 1996 (Environmental Management), and a Bachelor's degree from the State University College of New York, Geneseo, NY, May 1987 (Political Science/Criminal Justice). The facts as sworn to in this Affidavit were provided by Special Agent Elliott Pimental of the Salt Lake City office of the Inspector General, Office of Investigations.

2. Title II, or Old Age, Survivors, and Disability Insurance (OASDI), is the familiar Social Security social insurance program into which participants make payroll contributions based on earnings. Benefits are paid to insured workers and eligible family members when they retire or become disabled and to the survivors of deceased workers.

3.  On December 29, 2005, SSA Title II beneficiary Marell Oaks (aged 95) of Lyman, Wyoming died. Her death was not reported to the Social Security Administration by any state or local agency. The funeral home in charge of Oaks' arrangements had a Social Security number provided to it, however, the number provided by family members was off by one digit.

4.  As a result, Social Security Direct Deposit payments issued to Marell Oaks continued to be deposited at WyoChem Federal Credit Union, account number 34941, located in Green River, Wyoming, Lyman branch. The deposits continued from January of 2006 through February of 2008 and totaled $17,025.00.

5.  Records obtained from WyoChem Federal Credit Union indicate that Paula **WALKER** and Marell Oaks were the listed owners of the account between the period of January of 2006 through February of 2008. Paula **WALKER** is Marell Oaks' granddaughter. The account records show that the Social Security deposits were received in the account, and later throughout each month the funds were accessed through payments and cash withdrawals.

6.  On January 16, 2009, SA Pimentel interviewed Paula **WALKER** who admitted to receiving the Social Security benefits issued to her grandmother. **WALKER** further admitted to knowing that taking such benefits was wrong, and expressed a willingness to repay the loss amount. **WALKER** executed a voluntary written statement which is recited here in full:

> "I Paula Walker have asked my daughter to write for me. Her name is Tracy Jaggi.
>
> I relize I have made a mistake in using money that did not belong to me for a long time after my Grandmother passed. I have been under alot of mental stress etc. I was injured at work, receving a broken neck in 1997. It has progressed. I am aflicted metally, physically ect. I am on alot of medication, and under alot of stress. Most days I am unable to function, or think. I didn't relize that I was still using

> grandmas money. I tried to stay on my rotine with paying bill's ect. I thougt that the funural home had taken care of letting S.S. know about Grandmas death. I feel very bad about using $ that did not belong to me. I have re-applied for S.S. for myself, and am hoping that with the settelment that I receve I will be able to repay this money. Currently I have θ income if SS doesn't come through most likely I will be put on SSI., at that time we could work out paments. I am so very very sorry that I didnt relize sooner. and was using $ that didnt belong to me. I cant express enough of how sorry I am. for using/taking this $. I do want to make restitution." [sic]

7. On March 4, 2009, SA Pimentel interviewed Tracy Jaggi, Paula **WALKER**'s daughter, and Marell Oaks' great-granddaughter. Jaggi stated that **WALKER** had assisted in making the funeral arrangements for Oaks. Jaggi stated that she (Jaggi) had become suspicious that **WALKER** was cashing checks that **WALKER** should not be, such as checks that had been issued to the now deceased Oaks. Jaggi stated that Paula **WALKER** had previously expressed remorse and guilt for having received SSA benefits on behalf of the deceased Marell Oaks. Furthermore, Jaggi stated that Paula **WALKER** told Jaggi that she (**WALKER**) knew that it was wrong to operate the account and negotiate checks and deposits in Oaks' name. **WALKER** also told Jaggi that she (**WALKER**) felt guilty about the money coming into the account, but that the continuing SSA benefits were a "blessing" to **WALKER**. (Jaggi then reported her suspicious to WyoChem Federal Credit Union.)

8. On July 25, 2008, and again on March 4, 2009, SA Pimentel interviewed Kathi Palinek, Chief Executive Officer of WyoChem Federal Credit Union. Palinek stated that in early 2008, **WALKER** attempted to close the WyoChem account, because of garnishments placed upon the account. Palinek told **WALKER** that in order to close the account at WyoChem, Marell Oaks had to come to the credit union branch in person to execute the necessary forms to close the account.

**WALKER** offered to take the forms home to have Oaks sign the forms there. **WALKER** did not inform Palinek that Oakes had been dead for over two years.

**END OF AFFIDAVIT**

## PENALTY SUMMARY

**DATE:**  October 5, 2009

**DEFENDANT NAME:**  PAULA SUE WALKER

**VICTIM:**  YES

**OFFENSE AND PENALTIES:**

**OFFENSE:**   Ct. 1:   **18 U.S.C. § 641**
(Theft of Government Monies)

**PENALTIES:**   10 YEARS IMPRISONMENT
$250,000 FINE
3 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT
Class C Felony

**TOTALS:**   10 YEARS IMPRISONMENT
$250,000.00 FINE
3 YEARS SUPERVISED RELEASE
$100.00 SPECIAL ASSESSMENT

**AGENT:**   Elliott Pimental, SSA-OIG   **AUSA:**   Lisa E. Leschuck

**ESTIMATED TIME OF TRIAL:**        **INTERPRETER NEEDED:**

  ✓  five days or less                 ___ Yes
  ___ over five days                   ✓  No
  ___ other

**THE GOVERNMENT:**

  ___ will                             ___ The court should not grant bond
                                           because the defendant is not bondable
  ✓  will not                              because there are detainers from other
                                           jurisdictions
  **SEEK DETENTION IN THIS CASE.**